An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-290

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Mecklenburg County No. 12 CRS 233035-36, 13 CRS 599 |

JAMEL LAPOINTE ALLEN,
Defendant.

Appeal by defendant from judgments entered 28 August 2013 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 27 August 2014.

*Attorney General Roy Cooper, by Special Deputy Attorney General Terence D. Friedman, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Anne M. Gomez, for defendant.*

ELMORE, Judge.

On 28 August 2013, a jury found Jamel Lapointe Allen (defendant) guilty of possession of a firearm by a felon and of possession of drug paraphernalia. Defendant pleaded guilty to attaining the status of a habitual felon. The trial court sentenced defendant to 60 to 84 months imprisonment for the possession of firearm by felon charge, concurrent to a sentence of 60 days imprisonment for possession of drug paraphernalia. Defendant raises five evidentiary issues on appeal. After careful consideration, we hold that defendant received a trial free from prejudicial error.

## I. Background

The State first called Officer Daniel Bignall with the Charlotte-Mecklenburg Police Department. Officer Bignall testified that he was assigned to the Freedom Division Focus Mission Team, "a violent crime suppression unit" that "patrol[s] areas where we have problems with robbers, drugs, [and] prostitution." On 26 July 2012, Officer Bignall and eight to eleven additional officers executed a search warrant at 3136 Timberbrook Drive, Apartment B in Charlotte. The officers entered through a sliding glass door in the rear of the apartment. Officer Bignall testified he entered "Bedroom Number

1" (bedroom 1) and found defendant sitting on the bed. Defendant and a female who was also present in the apartment were moved to the living room and read their Miranda warnings.

Officer Bignall searched bedroom 1 and found defendant's criminal record and paperwork from the DMV with defendant's name on it in the closet. Officer Bignall noted that the closet otherwise contained only men's clothing. Officer Bignall confiscated two digital scales, sandwich baggies, and a razor blade from the top of the dresser and defendant's cell phone, which was sitting on the bed.

Officer Brandon Williamson with the Freedom Division Focus Mission Team participated in the execution of the search warrant at the Timberbrook apartment. Officer Williamson searched bedroom 1 and located a North Carolina ID belonging to defendant. The ID listed defendant's address as 6039 Mary Blaire Lane, Charlotte. Officer Williamson noted that the dry-cleaning in the closet was tagged with the first four letters of defendant's last name and the invoice had defendant's full name on it.

When he lifted the mattress, Officer Williamson uncovered a Smith & Wesson semi-automatic firearm with built-in laser sight. A loaded magazine for the firearm was next to it. When asked,

"was there anything else in that room that indicated that someone [besides defendant] was using that room[?]", Officer Williamson responded, "No, not that I observed." Officer Williamson testified that defendant admitted in an interview he had touched and held the firearm but denied owning it.

Officer Alex Saine, also with the Freedom Division Focus Mission Team, testified that defendant was found in bedroom 1 and the female was found in a second bedroom. Officer Saine participated in the search of bedroom 1. He discovered a safe in the closet that contained defendant's birth certificate and other documents in defendant's name.

Officer Saine testified that in an interview, defendant initially referred to the cell phone found on the bed in bedroom 1 as "his." However, when confronted with evidence that the phone's home screen displayed a picture of the firearm, "all of the sudden he didn't know about the phone." When asked about a video of the firearm on the phone, defendant again denied that the cell phone was his. Officer Saine testified that the cell phone video showed a male holding the Smith & Wesson firearm—"showing it off for the camera." There was a male voice narrating, and the video was shot in bedroom 1.

Rachael Scott, DNA analyst for the Charlotte-Mecklenburg Police Department's crime laboratory, testified that defendant's DNA profile was found on the grip of the firearm as well as on the magazine. Based on the evidence, defendant was indicted on charges of possession of a firearm by a felon, possession with intent to sell or deliver a controlled substance, and possession of drug paraphernalia. However, the controlled substance did not test positive as a narcotic. The State therefore dismissed the charge of possession with intent to sell or deliver a controlled substance.

Defendant testified on his own behalf at trial. Defendant alleged that at no time did he reside at the Timberbrook apartment. He stated that he went to the Timberbrook apartment on 26 July 2012 to pick up Charmane Reddy, a friend who needed a ride to work. After dropping Ms. Reddy off, defendant testified that he returned to the Timberbrook address to get something to eat and "20 minutes later the police came." Defendant testified that he had personal items in bedroom, "for storage basically." Defendant stated that many of the personal items in bedroom 1 belonged to his deceased father, including the dry-cleaning. Defendant denied storing the digital scale and firearm in bedroom 1.

## II.  Analysis

### A. Motion for Mistrial

Defendant contends the trial court erred in failing to grant his motion for a mistrial after Officer Saine testified that defendant was arrested for possession of cocaine. Defendant argues that the admission of Officer Saine's testimony violated the North Carolina Rules of Evidence and resulted in substantial and irreparable prejudice to him.  We disagree.

Under N.C. Gen. Stat. § 15A-1061 (2013), a mistrial is warranted when "there occurs during the trial . . . conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case."  The trial court's denial of a motion for mistrial is reviewed only for manifest abuse of discretion.  *State v. King*, 343 N.C. 29, 45, 468 S.E.2d 232, 242 (1996).

> The general rule is that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. . . . In appraising the effect of incompetent evidence once admitted and afterwards withdrawn, the Court will look to the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict. In some instances because of the serious character and gravity of the incompetent evidence and the obvious difficulty in erasing it from the mind, the

Court has held to the opinion that a subsequent withdrawal did not cure the error. But in other cases the trial courts have freely exercised the privilege, which is not only a matter of custom but almost a matter of necessity in the supervision of a lengthy trial. Ordinarily where the evidence is withdrawn no error is committed. This is also the rule when unresponsive answers of a witness include incompetent prejudicial statements and the court on motion or *ex mero motu* instructs the jury they are not to consider such testimony. Whether the prejudicial effect of such incompetent statements should be deemed cured by such instructions depends upon the nature of the evidence and the circumstances of the particular case.

*State v. Aycoth*, 270 N.C. 270, 272-73, 154 S.E.2d 59, 60-61 (1967) (citations and quotations omitted).

Because the substance seized from the Timberbrook apartment did not test positive as an illegal narcotic, the State dismissed the charge of possession with intent to sell or deliver a controlled substance prior to trial and agreed not to reference the charge at trial. The evidence at issue here was elicited when the State specifically asked Officer Saine on what charges was defendant arrested. Officer Saine responded: "For possession of a firearm by a felon, [and] possession of cocaine." Defendant immediately objected to this testimony, but the trial court overruled the objection. During a bench

conference the trial court reconsidered--denying defendant's motion for mistrial but agreeing to strike the contested testimony from the record. As such, the trial court issued the following curative instruction:

> Ladies and gentlemen, the testimony just prior to the break by the officer, the defendant was charged with a particular offense, is stricken. The fact that someone has been charged with something is no evidence of guilt, and you're to disregard the officer's answer about what the defendant was charged with. That answer is not to influence your decision in its weighing or is to play any part in your deliberations.

Defendant contends that "the knowledge that [he] had been arrested for possession of cocaine was so highly prejudicial it could not be erased from the jurors' minds with a curative instruction." We are not persuaded. Defendant cites *State v. Scott*, 331 N.C. 39, 413 S.E.2d 787 (1992) to support his contention. In *Scott*, the defendant was on trial for second-degree rape. The State elicited testimony from an acquaintance of the defendant who testified that the defendant had raped her two years earlier under similar circumstances. *Id*. at 41, 413 S.E.2d at 788. The defendant had been tried and acquitted of the alleged rape. Our Supreme Court held that that

> evidence that defendant committed a prior

alleged offense for which he has been tried and acquitted may not be admitted in a subsequent trial for a different offense when its probative value depends, as it did here, upon the proposition that defendant in fact committed the prior crime. To admit such evidence violates, as a matter of law, Evidence Rule 403.

*Id*. at 42, 413 S.E.2d at 788. "When the intrinsic nature of the evidence itself is such that its probative value is always necessarily outweighed by the danger of unfair prejudice, the evidence becomes inadmissible under the rule as a matter of law." *Id*. at 43, 413 S.E.2d at 789.

In *Scott*, the link between the inadmissible evidence and the crime with which the defendant was charged was certain and unmistakable. Here, Officer Saine's mere statement that defendant was arrested for possession of cocaine does not corroborate the additional evidence the State presented at trial. There is little if any connection between the incompetent evidence and the crimes tried in the instant case. We hold there is no reason to believe that defendant was prejudiced by the admission of this evidence or that the jury depended upon this evidence in any way to arrive at the guilty verdict. The error was cured by prompt and adequate action by the trial court, "since the presumption is that jurors will

understand and comply with the instructions of the court." *State v. Britt*, 288 N.C. 699, 713, 220 S.E.2d 283, 292 (1975). Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

## B. Testimony of Job Duties

Defendant next argues that the trial court erred in allowing the officers to testify that they were assigned to the Freedom Division Focus Team, which is a street drug interdiction unit and a violent crime suppression unit that investigates street level drug crimes within the Freedom Division and murders, rapes, and robberies. We disagree.

We note at the outset that defendant did not object to the admission of the contested testimony at trial. As such, we review this argument for plain error. "A reversal for plain error is only appropriate in the most exceptional cases." *State v. Duke*, 360 N.C. 110, 138, 623 S.E.2d 11, 29 (2005). Plain error should be applied only when the defendant proves that, "after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations and quotations omitted) (alteration in

original).   An appellate court "must be convinced" by the defendant that "absent the error the jury probably would have reached a different verdict."  *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  N.C. Gen. Stat. § 8C-1, Rule 401 (2013). Generally, all relevant evidence is admissible, N.C. Gen. Stat. § 8C-1, Rule 402, but evidence that has "not been connected to the crime charged and which [has] no logical tendency to prove any fact in issue [is] irrelevant and inadmissible."  *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228-29 (1991).

Here, Officer Bingal testified that he worked on the "Freedom Division Focus Mission Team," which is "a unit with uniformed patrol and uniformed [sic] police car, and the lieutenants tell us where to go where crime spikes have occurred. . . . We're a violent crime suppression unit, basically.  We patrol areas where we have problems with robberies, drugs, prostitution.   We do a lot of search warrants."   Officer Brandon Williamson testified he was

"assigned to the Freedom Division in their Focus Mission Team," where he investigated "[m]urders, rapes, robberies, drugs, prostitution, and weapon offenses. Basically street crimes in the division." Lastly, Officer Saine testified he was assigned to the "Freedom Division, Focus Mission Team," which "is basically a street crimes unit, or also known as a Street Drug Interdiction Unit. We investigate street level drug crimes with the Freedom Division."

On appeal, the crux of defendant's issue is that the foregoing testimony constituted inadmissible character evidence tending to show that defendant was a "hardened criminal." Defendant contends that the officers' testimony lacked relevance and "had nothing to do with [defendant's] guilt or innocence." Further, defendant contends that he was irreparably prejudiced by its admission. In support of his argument, defendant relies on *State v. Hinton*, a case in which this Court held that it was error to allow Sergeant Bray to make ninety-one references to gangs or gang-related activity when the gang-related testimony "had no tendency to make any fact of consequence more likely than not." *State v. Hinton*, ___ N.C. App. ___, ___, 738 S.E.2d 241, 246 (2013).

Defendant's reliance on *Hinton* is misplaced. Our holding in *Hinton* was premised on the well-established rule that evidence of "membership in [a gang] organization may only be admitted if relevant to the defendant's guilt." *Id*. Because the gang-related evidence was "never connected to the crime charged" in the *Hinton* case, we held that it was irrelevant and inadmissible. *Id*. at 246-47. In the instant case, the testifying officers were merely explaining their role with the Charlotte-Mecklenburg Police Department on the Freedom Division Focus Mission Team, which included investigating murders, rapes, robberies, drugs, prostitution, and weapon offenses. At no point during trial was it suggested that defendant was the perpetrator of crimes beyond which he had been charged. There was no reason for the jury to conclude defendant was a murderer or rapist or an otherwise "hardened criminal." The trial court did not err.

## C. **Best Evidence Rule**

Defendant next contends that the trial court violated the best evidence rule when it permitted Officer Saine to testify to the contents of the video found on defendant's cell phone when the video itself was allegedly available. We agree that the trial court may have violated the best evidence rule (assuming

the cell phone video was available to be shown in court). However, such error did not constitute prejudicial error.

According to our Rules of Evidence, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." N.C. Gen. Stat. § 8C-1, Rule 1002 (2013). "The best evidence rule requires that secondary evidence offered to prove the contents of a recording be excluded whenever the original recording is available." *State v. York*, 347 N.C. 79, 91, 489 S.E.2d 380, 387 (1997).

At trial, Officer Saine testified on direct examination that he watched a video on defendant's cell phone after defendant was arrested:

> Q. Did you ever have an opportunity to watch that video?
>
> A. Yes.
>
> Q. Was it from the same phone that we were talking about?
>
> A. Yes.
>
> Q. And what did you actually see on the video?
>
> A. There's a male holding this pistol and just showing it off for the camera. There is a male voice in the background more or less narrating what's going on. The background of the video obviously was taken

in the defendant's bedroom.


Q. Was it showing the same setup as where the defendant was found?

A. Yes.

Q. And the gun that was shown on the video, did it look the same as the gun that was collected from the bedroom?

A. Yes.

Q. And what about it was so similar?

A. The size of it, as well as the red dot sight that's a feature of that pistol.

MR. OSHO: Your Honor, at this time I believe all this is hearsay, and because it was heard.

THE COURT: I'm sorry?

MR. OSHO: Your Honor, I believe the video is here. That would be the best evidence for the jury[.] [The officer's opinion as to the contents of the video] would be hearsay, your Honor.

THE COURT: Well, sustained.


From the record it is unclear whether the cell phone video was in fact available at trial. Defendant merely stated he "believed" the video was present at trial, and there was no additional discussion as to whether it should be admitted. Assuming, without deciding, that the admission of Officer

Saine's testimony concerning the contents of the video was erroneous and violated the best evidence rule, we are unconvinced that this error "probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (citation and quotation omitted).

The State presented sufficient evidence of defendant's constructive possession of the firearm irrespective of Officer Saine's testimony pertaining to the contents of the cell phone video. "Possession of a firearm may [] be actual or constructive." *State v. Boyd*, 154 N.C. App. 302, 307, 572 S.E.2d 192, 196 (2002). "Constructive possession of an item exists when a person does not have the item in physical custody, but . . . nonetheless has the power and intent to control its disposition." *State v. Young,* 190 N.C. App. 458, 460, 660 S.E.2d 574, 576 (2008). Specifically, the State presented the testimonial evidence of three law enforcement officers that defendant was discovered in bedroom 1. Bedroom 1 also contained numerous personal items belonging to defendant, including his ID, birth certificate, criminal record, food-stamp card, and clothing. The Smith & Wesson firearm was found under the mattress and scales were found on the dresser in bedroom 1. The

firearm tested positive for defendant's DNA. There was evidence presented that defendant referred to the confiscated cell phone as "his," until law enforcement officers pointed out that the home screen displayed a photograph of the firearm. There was evidence that defendant admitted to having touched and played with the firearm, but denied owning it.

Based on the totality of the circumstances, the State's evidence showing defendant's ownership or control of the contraband establishes sufficient incriminating circumstances to support a conclusion that defendant constructively possessed the contraband. *Id*. at 461, 660 S.E.2d at 577. Even if Officer Saine's testimony regarding the cell phone video had been struck from the record or if the video itself had been shown, the jury probably would not have reached a different verdict. *Walker, supra*.

### D. <u>Officer Saine's Testimony</u>

In defendant's final two arguments, he contends that the trial court committed reversible error in admitting portions of Officer Saine's testimony. In particular, defendant avers that he was irreparably prejudiced by the admission of Officer Saine's testimony pertaining to (1) a description of the items found in the safe as "dominion items which suggest who the safe

belongs to," (2) his references to bedroom 1 as "the defendant's bedroom," (3) and his testimony that defendant's birth certificate was found in the safe. The core of defendant's argument is that, without the admission of this evidence, the State would have been unable to prove constructive possession of the contraband. We disagree.

Given the State's evidence of constructive possession detailed in the preceding discussion, and our conclusion that the State presented sufficient evidence to support the jury's determination that defendant constructively possessed the contraband, we overrule defendant's final two arguments. There was sufficient evidence for the jury to find that defendant constructively possessed the contraband irrespective of Officer Saine's testimony.

### E.  Conclusion

In sum, the trial court did not err in (1) denying defendant's motion for mistrial; (2) allowing the officers to testify to their duties with the Freedom Division Focus Team; and (3) allowing Officer Saine to describe the contents of the safe as "dominion items," call bedroom 1 "defendant's bedroom," and testify that defendant's birth certificate was found in the safe. The State presented sufficient competent evidence that

defendant constructively possessed the contraband. Assuming *arguendo* that the cell phone video was available at trial, the trial court violated the best evidence rule by allowing Officer Saine to testify to the contents of the video. However, this error did not constitute prejudicial error. Accordingly, we hold that defendant received a trial free from prejudicial error.

No prejudicial error.

Judges CALABRIA and STEPHENS concur.

Report per Rule 30(e).